Morning, Your Honors. I'm Joseph Walsh, the attorney for the appellant. The first issue I wanted to raise was the issue of the denial of his constitutional right of effective assistance of counsel during plea bargaining and the denial of the motion to reinstate the 30-month plea offer. Mr. Lopez-Lara eventually was sentenced to 77 months, but originally within a few days of his arraignment, he was offered a 30-month fast-track plea offer on the condition that he not bring any motions. His first decision was to accept that offer, but with further consultations with the public defenders, she told him about the St. Cyr motion to dismiss the indictment and told him that he had a possible chance of winning that motion and that if he lost the motion, he'd only be looking at either a sentence between 70 or 77 months based on the guidelines. She went, he went ahead and decided to reject the motion. Which is what, which is what gets. Yes. So her prediction is, her advice to her client on that point was correct. If he lost that motion, he was likely to be exposed to around 77 months. Yes. Ultimately, that's exactly what, what happened in the case. So the issue really turns upon the question of prejudice, and the, the way I have framed the prejudice is the prejudice was the lost opportunity to grab on to the 30-month sentence. Well, he had a second opportunity, didn't he? Didn't the, didn't the DA come back with a, or the U.S. attorney come back with a, with a second offer of 48 months? Yes, Your Honor. He turned, he turned back as well. I turned that down. He did. So even, even after this, the ineffective assistance of counsel, the alleged ineffective assistance of counsel takes place, he gets new counsel, and he's given a second offer of 48 months, which is still substantially below what he gets at 77 months, and he turns that down as well. Well, I, I was just worried at that time. I recommended he take it, but his response to me was, and I don't think I'm revealing any, anything confidential, was, was simply that his, his argument was Well, it'll stay within this room. Don't worry. His argument to me was, that I had no answer for, was why should I do an extra 18 months because my first counsel gave me bad advice? And so I said, I have no answer for that. And, and so essentially the prejudice is the lost opportunity to take the 30 months within the first 10 days when the fast-track plea offer was, was presented. And I, I think it's clear that the advice given by the, the public defender representing him was incorrect. He was actually, his exposure was Was incorrect, but my problem is, is it so bad as to have constituted ineffective assistance of counsel? I gather that the charging practices were in the process of changing. Is that right? Yes. And, and I think it was in response to the new case. But the new case was published and was available before counsel gave the advice. But it was a Seventh Circuit case. It wasn't even a case established in our circuit. So our circuit has not yet weighed in on this. We had one case from an outside circuit, and evidently she failed, she failed to see it. That's correct. And, and it laid out the law, and it was, it's, I don't know whether it's correct, but it's persuasive. I mean, I read the, the Seventh Circuit case, and it made a good, a good case for not grouping multiple entries in immigration cases, which results in longer sentences for multiple entries. And he was indicted on four, on four illegal entries. So, so essentially, her advice to him concerning his exposure was incorrect. And then when he learned later, before the, before the motion to dismiss the indictment was ruled upon, and he learned later that he was facing a possibility of 140 months, he said he, he wanted the 30 months back. He wanted to withdraw his motion. He approached the government, and the government's response was, was no. They, if you don't take the 30-day offer within the first 10 days of your appearance in court, it's withdrawn and it will never come back. And they refused to, to give it, to give that offer back. And at the hearing on the, the motion to compel reinstatement of 30 months, that was the testimony of the appellant. He said, if I had known that I was exposed to a possible 140-month sentence, I would have taken the 30 months. And, and so I, so I think that his, his decision or his choice was skewed by the erroneous legal advice of his attorney. And if he had, and he testified under oath, and I don't think that any, there's any dispute over it, that he testified that if he had been given correct legal advice, the path he would have taken was to accept the 30 months. And so my argument in the district court was, you know, any, anyone, even, even the United States attorney would complain if they were given erroneous legal advice at the time of trying to make an important decision that could affect, you know, years on their life. It was, it was a very important life decision at which he made that choice and he was given erroneous legal advice. And I don't think the United States attorney would be very happy if he went to a lawyer, the lawyer gave him incorrect advice, and he, and he made a decision, and then later on he found out that the correct advice was the risk or harm that he was facing was much greater. And upon learning that, he immediately said, well, I would have taken a different path, but if I didn't, with the passage of time, the door had been closed and it was never, we were never able to open it up again. And so the only way that we found opening up was the Ninth Circuit case of Noonan v. Mueller, which seemed to track very closely to the facts of our case. There, a plea bargain was offered of 11 years. The defense counsel told the defendant it was 22 years. He made a mistake. The defendant rejected the plea offer, went to trial, and got 15 years to life. And when he found out the offer was 11 years, he said, wait a minute, if I had known that back then, I would have taken it. Now there, there's clearly more prejudice in the, in the Noonan v. Mueller case than there is in, in Appellant's case because he didn't get the horrible sentence of 140 months, he got the 77 months, which was part of, of his early decision-making. But, but the, the fact remains that he, he lost an opportunity to make a sensible choice. And the sensible choice would have been the 30 months. And he would have taken that sensible choice if he had been given correct legal advice. He was not given correct legal advice based on the Seventh Circuit case. And there's, I, I don't think there's any other authority disputing the Seventh Circuit case, although there's a reluctance upon the Probation Department in, here in the, in the Central District to follow the Seventh Circuit case. And it may be that ultimately the Ninth Circuit may not follow that case. But, but, but that's the, the only case that we have. And so, so we think that we, we met the two, the two-part standard of Strickland. There was deficient performance because in the context of her advising her client on this important thing, she gave him an incorrect estimate concerning what he was facing if he went, went forward with the motion to dismiss. And the prejudice was this lost opportunity of 30 months. And it, and it was prejudice because we tried, she, before she was relieved, she tried to open the door and get the 30 months back and the government said no. Then she, she told the court she felt she should be relieved because she believed she had given incorrect advice and there may be ineffective assistance issue. Then I was appointed and then I tried to open the door and it was, it was slam shut. They just simply would not re-offer the 30 months again. They did offer the 48. I, I felt that that was a reasonable settlement, but it's not my case. And his point was that he, he, he had an opportunity for 30. He was given incorrect legal advice and he should be entitled to his remedy. And so he, he pursued the, the motion with the district court. And the motion was denied and that's why we're here. We think that the case is, is fairly indistinguishable from Nunez versus Mueller. There is a second issue concerning the merits of the motion to dismiss. I see I've only had about two and a half minutes. So I'll just barely be brief. I think there's three issues. I think that there was a sincere violation at the, at the deportation hearing when he was told that he wasn't, he wasn't qualified for discretionary release. And, but the motion was ultimately denied because they said that he did not exhaust his administrative remedies and then there was no light, no prejudice because he wouldn't have gotten relief anyway. On the issue of exhausting his remedies, I think we come close to the case of Pallara's Galen because the, there wasn't a considered and intelligent waiver of his right to appeal because the, the immigration judge told him that he, he doesn't qualify for discretionary relief because the, the appeals board has already ruled against him in the Soriano case. And so it was basically telling him that the issue had already been settled. Although he has a right to appeal, he's going to lose it because there's this recent case that has terminated your right. And so I think on the exhaustion of administrative remedies, we, our argument is it wasn't a considered and intelligent waiver. And then the last issue is the issue of prejudice. And the, the standard of, of prejudice is whether there's a reasonable possibility that he might, might get relief. And I think the district court was really deciding that if they were the attorney, if he was the attorney general, he wouldn't grant this person relief because of his criminal record. But, but the possibility was certainly there because he was brought to the United States at age three. He married a U.S. citizen. He has two U.S. citizen brothers that were born after him. His four U.S. citizen children. His mother is a, a legal resident since 1972. And he's been in the United States for 24 years after being brought as a, as a baby. So I think those are the critical things, the strong family ties to U.S. citizens that, that are the weightiest factors and that would have given him a plausible argument for, for relief, which would have met the, the prejudice prong of, of, of granting the motion to dismiss. He, he has a pretty hefty rap sheet, hasn't he? Yes, Your Honor. Most of them are, are misdemeanors. The only one felony was the felony spouse abuse for which he went to prison and then he had two parole violations. But the parole violations, because when he was released on parole as a spousal abuser, you're ordered to stay away from your spouse. And he kept coming back because that was his spouse and he had children with her. And each time that would happen, the parole office would find out. And we've got a lot of bad things here. Looting lascivious acts with a child under 18, you know, I mean, this is a big rap sheet. It goes on. I mean. Yes, I agree that other cases where they found plausible grounds for relief, the people did not have as long a rap sheet. But the only felony conviction is the one felony spousal abuse. And then the narcotics offense he had was a misdemeanor under the influence offense. And then the others, I believe, are. He's had about 15 aliases, hasn't he? Okay. Well, it's like an encyclopedia when you go through all this. Yeah, that was the weakest part of the argument. But the strongest part were the things that I had mentioned of his close ties to the family. I'm not sure what I've used up all my time, but if I have, I'll reserve it. Good morning, Your Honors. Sean Loki for the United States. The first thing I want to address is defense counsel stated that when he was offered the fast track, I think the background facts are a little bit important here. When he was offered the fast track, that was conditioned on his not bringing any motions. That's not precisely right. The way these fast tracks are offered is you're complained upon. You have about 14 days. You waive your preliminary hearing. You have about 14 days to accept this. Okay? It's not don't bring any motions. It's don't force us to go to the grand jury. We have an interest. The government has an interest in this program and in providing this opportunity to these people. Is this the same program that's used in San Diego? I do not believe it is, Your Honor. I believe San Diego has a slightly different program. I don't know the exact distinctions. That's only from hearsay discussions with people. I don't know exactly. Ours is 30 months based on certain criminal history categories and scores, previous convictions, things along those lines. And what we're essentially saying is, here's the deal. You can take it. We'll file information. We won't have to go to the grand jury. We won't have to go through the variety of processes that we then have to go through. And it's a fast track because it's supposed to be a fast. I want to emphasize that I think defense counsel skipped over it. In this case, the defendant was alleging ineffective assistance of counsel. Now, I do not believe that the public defense counsel. Why all that rigidity? I mean, here it is. Take it or leave it. Boom. Why all that rigidity? Well, we have an interest, Your Honor, in bringing these cases. I think the government has an interest in bringing these cases. And I think it's a legitimate interest. This case particularly shows why. I mean, we have a defendant that's been deported eight times at 25 criminal history points. I think the district judge counted 19 adult criminal convictions. We want to bring these people to justice. The way we believe we can do that, and it's provided for under law, is the fast track program. And why the rigidity? Why you can't get it back? Doesn't all that kind of violate the guidelines, too? Actually, I don't believe it does. You know, they look at the criminal history. So you're just kind of encroaching on the guidelines. Well, it is sentenced different than the guidelines, but it is actually not because the defendant has not been charged. What he's charged with is two counts of 1325. So in that case, if he stipulates to a sentence, in that case, he would not be subject to the same guidelines as if he was charged with 1326. I also do think that, and I'm not sure I have the provision right, but I think 5H1.3 of the guidelines actually allows for a departure based on an early disposition program. So I think there is something within the guidelines. What I like to focus on is the ineffective assistance, which I just do not believe there was any here, and I think the cases we cite show it. I actually, well, first of all, the 140 months we're talking about, I think it's important that we distinguish defense counsel told defendant, based on his criminal history, he'd be looking at a range of either 70 to 87, if it was criminal history category 5, or 77 to 96, if it was criminal history category 6. And that's what he turned out to be. The grouping and the not grouping in 3D1.2 of the guidelines that we're talking about does not mandate these are grouped or not grouped. That section actually says these kind of cases are grouped, these kind are not grouped. What we're talking about here, the guidelines section 2L1.2, is not listed. It says it's a case-by-case basis. So it's not mandated by the guidelines that he faced 140 months. Potentially, yes. Another thing I want to say about that is, certainly this Court has not decided, I'm not sure at this point, and I don't know if the Court will ever decide it, but the case that, and I did not even cite this case to defendant in my paper there, but the case is a 7th Circuit case and it looks at the circumstances of that case. The district judge in this case actually distinguished that case. He said, look, these four reentries were part of a common scheme or plan. Now, we argued against that. We disagree with that. But the guidelines don't mandate the 140-month sentence. Now, with regard to that 140-month sentence, I also want to make another point. Defense counsel is looking at the high end, I'm sorry, the low end, assuming he doesn't plead and get the 3 points acceptance responsibility. Now, what we're talking about here, what we were always talking about here, was the defendant pleads guilty and gets 3 points off for acceptance, which is what happened in this case, even pleading to the 4 counts. That makes it 110 months. So what we're really talking about is he was advised 77 to 96 and at the low end he was looking at 110 months and we gave him a low-end recommendation. So it was a 14-month spread. I acknowledge certainly he could have gotten the 140 months under the guidelines. Of course, this was post-Booker. I don't believe that that inaccurate sentencing estimate, which ultimately turned out to be accurate, falls below an objective standard of reasonableness. There's a strong presumption that the counsel's conduct was reasonable. Strickland cautions us not to engage in, you know, hindsight after the case. In this case, the district court found, and the defendants pointed to nothing, that he didn't meet his burden. It was the defendant's burden. In this case, Your Honor mentioned that the process was changing at a time. Well, there was nothing in the record that the defendant provided about how many defendants were charged with multiple 1326 counts at that time. There is something in the record at the end of the sentencing proceedings saying that, yes, this was in flux. But she could not have, Ms. Sun could not have predicted what we were doing. Certainly — Well, she could have. She didn't. But she could have. Well, I imagine she could have had she read that. Had she read that case, it is possible she didn't. And I don't think her failure to do so, based on a case from a different circuit, falls below the objective standard of reasonableness. A district court also said the counsel's — there was no evidence produced by a defendant how counsel's conduct differed from other attorneys in this district. It was not like when this case was originally brought. This was happening commonly. And she — they produced some evidence of that. They certainly didn't. So I certainly don't think they met their burden on ineffective assistance, particularly in light of the Aiea v. Sun case. That case, you know, states that simple — a misestimate is not ineffective assistance of counsel. What it needs to be is a gross mischaracterization of the likely outcome. I do not believe we have that here. Defense counsel talks about erroneous legal advice. I think Aiea, in a way, addresses that specifically when it says that's not ineffective assistance of counsel, because if that — if providing an inaccurate sentencing estimate is based on anything, it seems to me it would be based on one of two things, either, you know, simple math, you know, you messed up the numbers, or you didn't necessarily look at the various provisions in the guidelines. I think that that's what it's talking about. I don't think it's the simple math. So the Court need go no further if there is not ineffective assistance. We need not get to the prejudice. That being said, I don't believe in this case there was prejudice. I don't believe that there's a reasonable probability here that but for defense counsel's errors, the result here would have been different. As I said, as Your Honor pointed out, the defendant here got essentially what he bargained for, reject the 30 months, you can run your motion to dismiss, and if that happens and you lose, you will get the 77 months. I'd like to point out for the Court several items in the record. In Government's excerpts of record at 67 and 74, the defendant was asked at the evidentiary hearing, put a declaration, he was asked by defense counsel, what was the most important factor in rejecting the most — I'm sorry, in rejecting the fast-track offer, the most important factor. He said the motion to dismiss. I believe that's Government's excerpt for record 67. Then I asked him, isn't it true that you rejected it because you wanted to run your St. Cyr motion? He answered yes. What he wanted to do was he wanted to not serve any time which would happen had he won the motion to dismiss. So that's one thing. I would like to emphasize he did reject a 48-month offer in this case, which we offered, and the question is posed, why should he do an additional 18 months? Because at the point that he was offered that, he had forced the Government to go through the process of indicting him, bring an agent in, bring the grand jury in, file all the paperwork and indict him. Then he forced the Government to also — How much work is this? In man hours? Yeah. Yeah. 20 minutes, 30 minutes? No, no. It's more than that. It's certainly more than that. There are people there. There's a grand jury clerk. There's the grand jurors. Now, it's not as much as indicting, say, a drug case would be, but, you know, it's easier than that. But it's not something — I mean, in this case, he was indicted four days afterwards. He also forced us in kicking out of the plea, and this is an interest that we have and I think is sort of important. In kicking out of the plea at the post-indictment arraignment, he puts us in a situation where now all of a sudden the clock is ticking, there's no plea in front of the court, and we need to indict him very quickly. That's a situation that we definitely wanted to turn. Now, I imagine there's — you know, you talk about take it or leave it. Why does it need to be so rigid? I believe that's — the government has interests. The government has certain resources. Now, it wasn't just, hey, we need to indict him in this case. Actually, the 48-month offer was also offered to him after. That was the third offer. I offered — the way this all started was I said — I looked at this and I said, well, look, he's — you know, under the guidelines, he could be looking at 28 — a level 28, which would be the higher sentence. So I sent his defense counsel letter and said, you know, plead the one. And he would — you know, we'll agree to the low-end 77 months. They didn't want that. So we had gone through that. Now, they had also filed the St. Cyr motion in this case. We had certainly researched that. We hadn't filed our opposition yet. A tremendous amount of resources actually went into this case before that 48-month offer was offered to him. So that's why he should do the additional 18 months. And, frankly, in this particular case with this defendant, 25 criminal history points and eight prior deports, I think that was more than fair. One other thing I want to point out, too, and the government's — You know, we were trying to save money. So the additional 18 months, where were we going to keep him? Terminal Island? Where would he be kept? For the additional 18 — Yeah. He would be where he normally would be in — wherever he was incarcerated. Okay. Where was that? I'm sorry? Where was that? Where was he incarcerated? Yeah. Ultimately? I believe he was — they asked for a recommendation of Lompoc. So I would believe he would be at Lompoc. What would it cost us for that? Probably, oh, maybe another 80,000, 90,000 to keep him locked up. Your Honor, this defendant, every time he comes back, commits more and more crimes. The district court said that. There are certainly resource issues on that side. We're trying to save money, but actually it's costing more money. But we definitely have an interest in deterring this defendant from ever coming back through the sentence. Now, I only have a short time left, Your Honor, so — You're actually over your time. Oh. Well, then I would submit, absent the Court, I have any questions. Yeah. We won't charge for the overtime, though. I appreciate that, Your Honor. We'll get some of ours back, too. Thank you. Your Honor, I've exceeded my time, so unless the Court has any further questions — Okay. We're fine. Thanks.
judges: Pregerson, W. Fletcher, Bybee